UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Satanic Temple,

               Plaintiff,

    v.

City of Belle Plaine, Minnesota;
Councilman Cary Coop; Councilwoman
Theresa McDaniel; Councilman Ben Stier;
Councilman Paul Chard; and Mayor
Christopher Meyer,

               Defendants.

Case No. 19-cv-1122 (WMW/LIB)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS AND DENYING
PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

---

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Plaintiff The Satanic Temple (TST) moves for judgment on the pleadings as to Count II of its complaint, which alleges a violation of its right to free speech as protected by the First Amendment to the United States Constitution. (Dkt. 22.) Defendants City of Belle Plaine, Minnesota (Belle Plaine), Mayor Christopher Meyer, and Belle Plaine city council members Cary Coop, Theresa McDaniel, Ben Stier, and Paul Chard (Council Members), move for judgment on the pleadings as to the entire complaint. (Dkt. 27.) For the reasons addressed below, the Court denies TST's motion for judgment on the pleadings and grants in part and denies in part Defendants' motion for judgment on the pleadings.

## BACKGROUND

Two resolutions passed by the Belle Plaine City Council are relevant to the legal analysis in this proceeding, Resolution 17-020 and Resolution 17-090. On February 21,

2017, the Belle Plaine City Council enacted Resolution 17-020, titled "ESTABLISHING

A POLICY REGARDING A LIMITED PUBLIC FORUM IN VETERANS MEMORIAL

PARK." In relevant part, Resolution 17-020 provides as follows:

> [T]he Council wishes to allow private parties access to Veterans Memorial Park for the purpose of erecting displays in keeping with the purpose of honoring and memorializing veterans . . . .
>
> . . .
>
> 1. The City designates a limited public forum in Veterans Memorial Park for the express purpose of allowing individuals or organizations to erect and maintain privately owned displays that honor and memorialize living or deceased veterans, branch of military and Veterans organizations affiliated with Belle Plaine. . . .
>
> . . .
>
> 9. The requesting party and not the City shall own any display erected in the limited public forum. The display must have liability coverage of 1,000,000 . . . .
>
> . . .
>
> 13. In the event the City desires to close the limited public forum or rescind this policy, the City, through its City Administrator, may terminate all permits by giving ten (10) days' written notice of termination to [the] Owner, within which period the owner must remove their display from city property.

On July 17, 2017, Resolution 17-020 was rescinded by the enactment of Resolution 17-

090, titled "RESCINDING THE POLICY AND ELIMINATING THE LIMITED PUBLIC

FORUM IN VETERANS MEMORIAL PARK."  In relevant part, Resolution 17-090 provides:

> BE IT RESOLVED by the Council of the City of Belle Plaine, Minnesota:
>
> 1.  The policy established in Resolution 17-020 is rescinded and the limited public forum established in the Park is hereby eliminated. Private displays or memorials placed in the Park shall be removed within a reasonable period by the owner thereof or, upon notice to such owner, or they will be deemed abandoned and removed by the City.

On February 23, 2017, TST submitted an application to erect a display in Belle Plaine's Veterans Memorial Park pursuant to Resolution 17-020.   TST received a permit on March 29, 2017.   The Belle Plaine Veterans Club also obtained a permit under Resolution 17-020 to erect a display.[1]   On June 29, 2017, TST notified the City Administrator that its memorial monument was complete.  TST spent "substantial sums in the design and construction of its display" and acquired liability insurance as required by Resolution 17-020.

Before the passage of Resolution 17-090 on July 17, 2017, Belle Plain Veteran's Club voluntarily removed its display from Veterans Memorial Park.  Resolution 17-020 was rescinded by Resolution 17-090 on July 17, 2017.  The next day, Belle Plaine notified TST by letter that the Belle Plaine City Council adopted Resolution 17-090 and enclosed

---

[1]   Neither party identifies the date on which the Belle Plaine Veterans Club's permit was issued or approved.  Both parties appear to agree that the permit was approved and issued after Resolution 17-020 was passed and before Belle Plaine Veterans Club voluntarily removed its display.

a check reimbursing TST for its permit-application fee.  As a result of Resolution 17-090, TST never erected its display.

Immediately after the rescission, Belle Plaine issued a press release dated July 18, 2017, which states in relevant part:

> As called-for in the resolution, owners of all privately-owned Park displays currently located in the Park's designated space are now being given 10 days' notice to remove the displays . . . .
>
> The original intent of providing the public space was to recognize those who have bravely contributed to defending our nation through their military service. In recent weeks and months, though, that intent has been overshadowed by freedom of speech concerns expressed by both religious and non-religious communities.
>
> The debate between those communities has drawn significant regional and national attention to our city, and has promoted divisiveness among our own residents.
>
> While this debate has a place in public dialogue, it has detracted from our city's original intent of designating a space solely for the purpose of honoring and memorializing military veterans, and has also portrayed our city in a negative light.

On April 25, 2019, TST commenced this action against Belle Plaine, Mayor Christopher Meyer, and four Belle Plaine City Council Members in their individual and official capacities.  Counts I and IX of the complaint allege violations of TST's right to free exercise of religion under both the United States Constitution and the Minnesota Constitution.  Counts II and X allege violations of TST's right to free speech under both the United States Constitution and the Minnesota Constitution.  Count III alleges a violation of TST's rights under the Equal Protection Clause of the United States

Constitution.  Count V alleges a violation of the Religious Land Use and Institutionalized Person Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc.  And Count VII alleges promissory estoppel.  TST moves for judgment on the pleadings as to Count II, and Belle Plaine cross moves for judgment on the pleadings as to the entire complaint.[2]

## ANALYSIS

Judgment on the pleadings is proper when there are no issues of material fact to be resolved and the moving party is entitled to judgment as a matter of law.  *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).  When evaluating the merits of a motion for judgment on the pleadings, the district court applies the same legal standard that applies to a motion to dismiss.  *See* Fed. R. Civ. P. 12(b)(6); *see also Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  To survive a motion for judgment on the pleadings, the complaint must contain sufficient factual allegations to state a plausible claim for relief.  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  A district court accepts as true all facts pleaded by the nonmoving party and draws all reasonable inferences from the pleadings in favor of that party.  *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016).  Without more, merely reciting the elements of a cause of action is insufficient, and legal conclusions asserted in the complaint are not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion for judgment on the pleadings, a district court refrains from considering matters beyond

---

[2]   Plaintiff concedes that its contract-related claims (Counts IV, VI, and VIII) should be dismissed.  And this Court agrees.  Those counts are dismissed without prejudice as the Court need not reach the merits of those claims.

the pleadings, other than certain public records and "materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal quotation marks omitted).

## I.     TST's Section 1983 Claims (Counts I, II, and III) Against the Individual Defendants

Defendants first seek dismissal of the claims against all individual defendants— namely, the Mayor and the individual Council Members—arguing that TST fails to state a claim for personal liability as to the individual defendants.  TST does not dispute the dismissal of its claims against those individual defendants who are immune from liability for their legislative acts.  But TST asserts that dismissal is unwarranted as to the claims for injunctive relief against these defendants in their official capacities.

It is well established that "[l]ocal legislators are entitled to absolute immunity from §1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998); *Hope Baptist Church v. City of Bellefontaine Neighbors*, 655 F. Supp. 1216, 1221 (E.D. Mo. 1987) (concluding that the city legislators were entitled to absolute immunity and dismissing the defendant mayor when the complaint failed to allege performance of any action by the mayor regarding plaintiff's rezoning application).  When determining whether an act is legislative, courts consider the nature of the act, not the motive or intent of the official performing the act. *Bogan*, 523 U.S. at 54; *Klingner v. City of Braham*, 130 F. Supp. 2d 1068, 1072 (D. Minn. 2001) (explaining that a city council's act of passing an ordinance, adopting a resolution, and passing a second ordinance, and the mayor's act of signing the ordinance into law, were legislative).  Voting on a council resolution is a

"quintessentially legislative" act that rests within the bounds of legitimate legislative activity. *Bogan*, 523 U.S. at 55.

TST identifies no factual or legal grounds that support holding the Council Members and the Mayor liable in their individual capacities for TST's Section 1983 claims. At best, the complaint identifies the fact that the individual Council Members voted to enact Resolution 17-020 and Resolution 17-090. Additionally, TST identifies statements by the Council Members regarding the intent of rescinding Resolution 17-020. These statements are insufficient, as this Court must consider only the *nature* of the act after stripping it of "all considerations of intent and motive." *Bogan*, 523 U.S. at 55. TST concedes, and the Court agrees, that the enactment by vote of Resolution 17-090, regardless of the Council's rationale, is a "quintessentially legislative" function and an "integral step[ ] in the legislative process." *Id*.

Furthermore, because all remaining claims against Defendants are disposed of by this Order for the reasons addressed below, no grounds to seek injunctive relief remain. Without allegations to support the claims asserted against the Mayor and Council Members in their individual capacities, TST fails to state a claim on which relief can be granted. For this reason, TST's Section 1983 claims (Counts I, II, and III) against the Council Members and the Mayor are dismissed. Having dismissed all individual defendants, the Court now considers the claims against Belle Plaine.

## II.    Free-Exercise Claims (Counts I and IX)

Belle Plaine seeks judgment on the pleadings as to TST's free-exercise claims, arguing that TST fails to adequately allege how Resolution 17-090 substantially burdens

TST's ability to freely exercise religion.  Belle Plaine also maintains that TST fails to sufficiently allege either how the enactment of Resolution 17-090 required TST to change its religious conduct or philosophy, or whether Resolution 17-090's interference with TST's religious beliefs or religious practices is real and not remote.  Consequently, Belle Plaine argues, it is entitled to judgment on the pleadings on TST's free-exercise claims under both the United States Constitution and the Minnesota Constitution.

To successfully plead and prove a free-exercise violation of the First Amendment to the United States Constitution, TST must establish that the governmental activity at issue places a substantial burden on its religious practice.  *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).  Free exercise of religion is substantially burdened when a regulation "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs; . . . meaningfully curtail[s] a person's ability to express adherence to his or her faith; or den[ies] a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." *United States v. Ali*, 682 F.3d 705, 709–10 (8th Cir. 2012) (internal quotation marks omitted).

TST fails to allege any constraint on either conduct or expression of a central tenet of TST's religious beliefs.  Instead TST makes conclusory statements in an effort to support Count I.  For example, TST alleges that 1) "[t]he actions of Belle Plaine . . . continue to violate Plaintiffs' rights under the Free Exercise Clause by imposing a substantial burden upon the religious exercise of Plaintiff TST and by intentionally discriminating against Plaintiff on the basis of religious belief;" 2) "a substantial burden has been imposed though

[*sic*] discriminatory and arbitrary revocation/denial/rescission of Plaintiff's previously approved application to construct a veteran's memorial at Veterans Memorial Park;" and 3) "Defendants discriminated against Plaintiff TST because of animus towards Plaintiff's religion."

These allegations fail to state a claim for relief for three reasons.   First, although TST identifies the core tenants of its religion, TST fails to explain or allege facts that identify any central tenet of its religious beliefs that TST cannot exercise because of Resolution 17-090.  Second, TST alleges no facts demonstrating that Resolution 17-090 prevents TST from expressing adherence to its faith.  And third, TST fails to allege whether and how any activity that Resolution 17-090 prohibits is fundamental to TST's religion. Not one allegation in TST's complaint, either expressly or by reasonable inference, explains *how* Resolution 17-090 burdens TST's religious practice.  As such, TST's conclusory allegations do not state a plausible claim that Resolution 17-090 violates TST's right to the free exercise of religion in violation of the First Amendment.

The Minnesota Constitution "afford[s] greater protection for religious liberties against governmental action than" the First Amendment.  *Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch.*, 487 N.W.2d 857, 865 (Minn. 1992).  When evaluating a free-exercise claim under the Minnesota Constitution, courts consider "whether the objector's belief is sincerely held; whether the state regulation burdens the exercise of religious beliefs; whether the state interest in the regulation is overriding or compelling; and whether the state regulation uses the least restrictive means."  *Id.* at 865.  Under the second *Hill-Murray* factor, those challenging the application of a law have the burden of establishing

that the challenged provision infringes their religious autonomy or requires conduct inconsistent with their religious beliefs.  *Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 204 (Minn. Ct. App. 2008).  To demonstrate such a burden, a plaintiff "must establish that the risk of interference with religious beliefs or practice is real and not remote."  *Id.* (citing *Hill‑Murray*, 487 N.W.2d at 866).  "Religious institutions can be required to comply with statutes of general application, and the focus is on whether compliance requires a change in religious conduct or philosophy."  *Id.* (internal quotation marks omitted).

In this instance, TST sufficiently alleges the sincerity of TST's religious beliefs. TST fails, however, to allege any facts that Resolution 17-090 burdens the *exercise* of TST's sincerely held religious beliefs.  Instead, TST merely proffers one conclusory statement in support of Count IX: "Defendants' motivation for enacting the rescission Resolution and terminating Plaintiff's permit to erect a display that honored veterans was significantly or exclusively because of Plaintiff's religious beliefs in violation of the Minnesota Constitution."  But TST does not allege that Resolution 17-090 spurred TST to change its religious philosophy or conduct.  Nor does TST allege that Resolution 17-090 required TST to act in a manner inconsistent with its religious beliefs.  And TST has advanced no allegation from which the Court could draw a reasonable inference to that effect.  In the absence of such factual allegations, the Court need not address whether the state interest is overriding or compelling and uses the least restrictive means.  *Id.* at 208– 10 (reaching the third and fourth factors only after respondent churches established that their religious beliefs were sincere *and* the exercise of their religious beliefs were

burdened).  Accordingly, TST's sole conclusory allegation does not state a plausible claim that Resolution 17-090 violates TST's right to free exercise of religion in violation of the Minnesota Constitution.

Because TST's conclusory allegations do not state a plausible claim that Resolution 17-090 violates TST's right to the free exercise of religion in violation of the United States Constitution or the Minnesota Constitution, Belle Plaine's motion for judgment on the pleadings as to TST's free-exercise claims, Counts I and IX, is granted.

### III.    Free-Speech Claims (Counts II and X)

Belle Plaine also moves for judgment on the pleadings as to TST's free-speech claims, which allege violations of the First Amendment to the United States Constitution and Article 1, Section 3, of the Minnesota Constitution.  In support of its motion, Belle Plaine contends TST's conclusory allegations fail to identify how Resolution 17-090 violates TST's free-speech rights.  TST cross-moves for judgment on the pleadings as to its First Amendment free-speech claim.  The impetus for Belle Plaine's enactment of Resolution 17-090, TST argues, was the controversial and divisive nature of TST's speech. The parties dispute whether Resolution 17-090 is reasonable and viewpoint neutral.

 "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  But one is not guaranteed "the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).  The character of the location where TST's claim arose governs any First Amendment public-forum analysis.  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).  Three categories of forums are

11

germane: "(1) the traditional public forum; (2) the designated public forum; and (3) the nonpublic forum." *Families Achieving Indep. & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1418 (8th Cir. 1997). Courts also distinguish between limited and unlimited public forums. *Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006). A limited public forum exists when "the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id.* (internal quotation marks omitted). Any restriction on speech that does not fall within the type of expression permitted in a limited public forum must be reasonable and viewpoint neutral. *Id.* But the government need not keep a limited forum open indefinitely. *See Perry Educ.*, 460 U.S. at 46.

TST's First Amendment claim alleges that Belle Plaine violated TST's right to free speech when the City Council enacted Resolution 17-090, thereby rescinding Resolution 17-020, which established a limited public forum in Veterans Memorial Park. Even if TST had a First Amendment right to speak while Resolution 17-020 was in effect, Belle Plaine's decision to rescind Resolution 17-020 and thereby close the limited public forum does not give rise to a First Amendment challenge. The parties do not dispute that Veterans Memorial Park was a limited public forum under Resolution 17-020. Therefore, to withstand Belle Plaine's motion for judgment on the pleadings, TST must allege that Resolution 17-090 was unreasonable and not viewpoint neutral. But TST's complaint fails to identify how Resolution 17-090 is unreasonable or discriminatory. Instead, the complaint identifies another organization that *voluntarily* removed its monument before Belle Plaine enacted Resolution 17-090 and alleges that permitting the Belle Plaine

Veterans Club to display its monument for *any* amount of time suggests that Belle Plaine treated the two organizations differently.  TST identifies a discrepancy in timing, namely, that TST's memorial was not completed and ready for display prior to the passage of Resolution 17-090.  But TST alleges no facts demonstrating that Resolution 17-090 did not apply equally to all entities seeking to erect a display or that TST was the only organization excluded from displaying a monument in Veterans Memorial Park.

Plaintiff's free-speech claim alleging a violation of the Minnesota Constitution fails for the same reasons.  The right to free speech protected by the Minnesota Constitution "is coextensive with the First Amendment," and Minnesota courts "look primarily to federal law for guidance."  *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 516 (Minn. 2012) (citing *State v. Wicklund*, 589 N.W.2d 793, 798–801 (Minn. 1999)).  Because the allegations in TST's complaint do not state a claim for a free-speech violation under the First Amendment, TST also fails to state a claim that Resolution 17-090 violates TST's right to free speech under the Minnesota Constitution.

For these reasons, Belle Plaine's motion for judgment on the pleadings as to TST's free-speech claims (Counts II and X) is granted.  TST's cross-motion for judgment on the pleadings as to Count II is denied.

## IV.    Equal-Protection Claim (Count III)

Belle Plaine seeks judgment on the pleadings as to TST's equal-protection claim, arguing that TST fails to allege any facts that Resolution 17-090 does not apply equally to private entities seeking to install a display in Veterans Memorial Park.  In response, TST

argues that the retroactive nature of Resolution 17-090 uniquely targets TST because of the controversial and divisive nature of TST's religion or speech.

To plead an equal-protection claim in violation of the United States Constitution, TST must allege: 1) TST was singled out and treated differently from similarly situated entities; and 2) the reason for taking this action was a prohibited purpose or motive, such as discrimination based on TST's religion. *See Ellebracht v. Police Bd. of Metro. Police Dep't of St. Louis*, 137 F.3d 563, 566 (8th Cir. 1998). Here, TST must allege that it is similarly situated "in all relevant respects" to any group with which it compares itself. *Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004). A plaintiff's failure to demonstrate that it "is similarly situated to those who allegedly receive favorable treatment" precludes the viability of an equal-protection claim because the Equal Protection Clause does not preclude dissimilar treatment of dissimilarly situated entities. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994); *see also Roark v. City of Hazen*, 189 F.3d 758, 761–62 (8th Cir. 1999) (holding that plaintiff's equal-protection claim failed because no evidence of dissimilar treatment of similarly situated individuals was presented). Here, the threshold inquiry in the equal-protection analysis is whether TST is similarly situated to any institution or person who allegedly received favorable treatment under Resolution 17-090. *United States v. Whiton*, 48 F.3d 356, 358 (8th Cir. 1995).

TST's equal-protection claim alleges that the retroactive nature of Resolution 17-090 uniquely targeted TST because of its controversial religion or speech. But TST's equal-protection claim fails, as a threshold matter, because TST and the Belle Plaine Veterans Club are not similarly situated. Regardless of whether TST brings its equal-

protection claim as a member of a protected class or as a class of one, TST must allege dissimilar treatment of similarly situated parties. *Mitchell v. Dakota Cty. Soc. Servs.*, 357 F. Supp. 3d 891, 902 (D. Minn. 2019). TST's complaint fails to allege any dissimilar treatment relative to similarly situated parties. TST's complaint is void of *any* allegation as to how TST and Belle Plaine Veterans Club are similarly situated. Even so, Belle Plaine Veterans Club, the only other organization to receive a permit to place a display in the park, removed its display prior to the passing of Resolution 17-090. To the extent TST argues that it was treated differently because TST was prohibited from erecting its display while Belle Plaine Veterans Club was able to display its memorial, TST does not allege disparate treatment of a suspect class. *See, e.g.*, *Monumental Task Comm., Inc. v. Foxx*, 259 F. Supp. 3d 494, 505 (E.D. La. 2017) (explaining that city's decision to remove all but one statute did not involve  a suspect class and applying rational basis review to analysis of the alleged differential treatment).

Even assuming that TST and Belle Plaine Veterans Club were similarly situated and that TST is part of a suspect class, TST fails to plead a viable equal-protection claim because TST does not allege any facts suggesting that Resolution 17-090 is discriminatory on its face or that Resolution 17-090 has both a discriminatory purpose and discriminatory impact. *See Mitchell*, 357 F. Supp. 3d at 902 (citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)). TST merely alleges that Belle Plaine's "motivation for enacting the rescission Resolution and terminating Plaintiff's permit . . . was significantly or exclusively to inflict harm on a politically unpopular group . . . ." This conclusory allegation alone, however is insufficient. *See Iqbal*, 556 U.S. at 686 (conclusory allegations that defendants

discriminated against plaintiff on account of "religion, race, and/or national origin" were insufficient to state a claim).  Furthermore, the text of Resolution 17-090, which states that "[p]rivate displays or memorials placed in the Park shall be removed within a reasonable period" and that "[a]ll application fees . . . will be reimbursed," demonstrates that the resolution applies equally to all entities that sought to erect a display in Veterans Memorial Park.  As evidence of discriminatory impact, TST argues that the Belle Plaine Veterans Club was able to erect and voluntarily remove its display prior to the passage of Resolution 17-090.  But this difference in treatment is attributable to when Resolution 17-090 was enacted in relation to the completion of each group's display.  The fact that the Belle Plaine Veterans Club erected its display earlier than TST is not alleged to have been in Belle Plaine's control.  And TST offers no allegation or evidence that the enactment of Resolution 17-090 was timed for the discriminatory purpose of treating TST differently than other groups.

Without any allegation that TST and Belle Plaine Veterans Club are similarly situated, that Resolution 17-090 is discriminatory on its face, or that Resolution 17-090 is discriminatory in purpose and impact, TST fails to state a claim on which relief can be granted under the Equal Protection Clause of the United States Constitution.  For this reason, Belle Plaine's motion for judgment on the pleadings as to this claim is granted.

## V.      Religious Land Use and Institutionalized Persons Act Claim (Count V)

Belle Plaine seeks judgment on the pleadings as to TST's claim that Belle Plaine violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, arguing that TST fails to sufficiently allege any facts that entitle TST to

protection under RLUIPA.  TST counters that, because the permit issued by Belle Plaine is an easement, the jurisdictional requirement of RLUIPA is satisfied and TST is entitled to relief.

To state a claim under RLUIPA, a party must plead facts that trigger the jurisdictional requirements identified in the statute.  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004); *Prater v. City of Burnside*, 289 F.3d 417, 433 (6th Cir. 2002); *Daywitt v. Minn. Dep't of Human Servs.*, No. 16-cv-2541 (WMW/LIB), 2017 WL 9249422, at *8 (D. Minn. Feb. 6, 2017), *report and recommendation adopted in part by*, 2017 WL 2265078 (D. Minn. May 23, 2017).  As relevant to TST's allegations here, under RLUIPA, jurisdiction is invoked when a "substantial burden is imposed *in the implementation of a land use regulation or system of land use regulations*, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."  42 U.S.C. § 2000cc(2)(C) (emphasis added); *Riverside Church v. City of St. Michael*, 205 F. Supp. 3d 1014, 1033 (D. Minn. 2016).  A "land use regulation" is a "zoning or landmarking law . . . that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an *ownership, leasehold, easement, servitude, or other property interest* in the regulated land or a contract or option to acquire such an interest."  42 U.S.C. § 2000cc-5(5) (emphasis added).  A government entity implements a land use regulation "only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."  *Prater*, 289 F.3d at 434.

TST argues that, because the permit issued by Belle Plaine pursuant to Resolution 17-020 was an easement, TST qualifies for relief under RLUIPA.  An easement is "an interest in land possessed by another which entitles the grantee of the interest to a limited use or enjoyment of that land." *Scherger v. N. Nat. Gas Co.*, 575 N.W.2d 578, 580 (Minn. 1998).  An easement may arise in one of three ways: as an express easement, as an easement by prescription, or as an implied easement.  An express easement arises when "[t]he written instrument creating the easement . . . defines the scope and extent of the interest in land." *Larson v. State*, 790 N.W.2d 700, 704 (Minn. 2010); *Hedderly v. Johnson*, 44 N.W. 527, 528–29 (1890) (explaining that an identification of the land subject to the easement and the intention of the parties is sufficient to establish an express easement).  An easement by prescription arises when the use of property has been "actual, open, continuous, exclusive, and hostile." *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn. 1999).  An implied easement arises when there is separation of title, a use giving rise to the easement that has continued for so long that it was intended to be permanent, and the easement is necessary for the enjoyment of the land.  *Clark v. Galaxy Apartments*, 427 N.W.2d 723, 725–26 (Minn. Ct. App. 1988).

TST alleges no facts that plausibly claim its one-year revocable permit created an easement.  TST does not allege any facts to support the possession of either an easement by prescription or an implied easement.  At most, TST alleges that it held an express easement before its permit was terminated.  But TST nonetheless fails to allege sufficient facts to identify the Belle Plaine permit as such.  Moreover, the Court's research has not identified any RLUIPA case in which an easement has served as the basis for a protectable

property interest.  Nor has TST cited any.  TST also cites no legal precedent, binding or otherwise, in which a city-issued revocable park permit was held to be an easement.  In sum, no legal authority supports TST's invitation to extend RLUIPA to the present facts.[3]

Moreover, TST fails to allege any facts that Belle Plaine acted pursuant to any zoning or landmarking law.  The complaint repeatedly alleges violations of RLUIPA.  But the complaint does not identify any zoning or landmarking law under which Belle Plaine acted when it passed Resolution 17-090.  *Prater*, 289 F.3d at 434 (finding RLUIPA inapplicable when a "[c]ity's decision regarding the fate of [a] roadway was . . . not based upon any zoning or landmarking law restricting the development or use of [a] Church's own private property").  Indeed, TST alleges no facts that support its assertion that a substantial burden on TST's religious exercise was imposed by Belle Plaine's implementation of any land use regulation nor any other facts that would invoke RLUIPA's protections.  And TST alleges no other valid ownership interest in the land.

Belle Plaine's motion for judgment on the pleadings as to this claim is granted.

---

[3]     The intention of RLUIPA, as prescribed by Congress, is to address frequent discrimination against churches because "[z]oning codes frequently exclud[ed] churches in places where [zoning codes] permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes." *Midrash Sephardi*, 366 F.3d at 1231 n.14 (quoting 146 Cong. Rec. S7774–01, *S7774 (2000) (joint statement of Sens. Hatch and Kennedy on the Religious Land Use and Institutionalized Person Act of 2000)).  RLUIPA "does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for . . . special permits . . . where available without discrimination or unfair delay." *Id.* at 1235 n.17 (quoting Joint Statement, at *S7776).  In keeping with the plain language of RLUIPA and as expressed in the legislative record, which appears to have anticipated *gatherings*, TST has not demonstrated that temporary property interests in public spaces are covered by RLUIPA.

### VI.    Promissory-Estoppel Claim (Count VII)

Belle Plaine also seeks judgment on the pleadings as to TST's promissory-estoppel claim, arguing that Minnesota Statutes Section 412.201 precludes the enforcement of promissory estoppel as to Belle Plaine.

Promissory estoppel "allows courts to enforce a promise on equitable grounds, even where parties did not enter into a contract." *City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 477 (8th Cir. 2006). To state a promissory-estoppel claim, TST must allege: "(1) a promise; (2) [detrimental reliance] on the promise; (3) [the] promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by the enforcement of the promise." *Id*; *accord Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992). A promissory-estoppel claim fails if the plaintiff does not establish each of the four elements. *City of St. Joseph*, 439 F.3d at 477.

The facts alleged by TST state a promissory-estoppel claim. First, TST alleges that on March 29, 2017, Belle Plaine issued TST a "permit to erect a display that honors veterans in a limited public forum." TST alleges that this permit, issued pursuant to Resolution 17-020 to allow private parties "access to Veterans Memorial Park for the purpose of erecting displays," is a promise. As alleged, this promise is clear and definite. *Cohen*, 479 N.W.2d at 391. Therefore, TST sufficiently alleges that Belle Plaine promised to permit TST to erect and maintain a display in Veterans Memorial Park for up to one year.

As to the second and third elements, TST alleges that Belle Plaine "intended to and in fact induced [TST] to rely on that promise in obtaining a permit and designing and

constructing a veteran's memorial of approved design that honored veterans in a limited public forum."  TST also alleges that it "[d]etrimentally relied on [Belle Plaine's] promise and expended financial resources, time and talent to design and construct the approved veteran's memorial display in full performance of its obligations to [Belle Plaine]."  And in doing so, TST acquired liability insurance as required by Resolution 17-020.  The allegations adequately state that Belle Plaine intended to induce TST's subsequent reliance on that promise to its own detriment.  *Id*.  (observing that "the promisor must have intended to induce reliance on the part of the promisee, and such reliance must have occurred to the promisee's detriment").  Based on these pleadings, TST sufficiently alleges that Belle Plaine should have reasonably expected that TST would expend time and resources to construct a display after receiving approval and that TST in fact expended such time and resources.

Finally, TST alleges sufficient facts that enforcement of Belle Plaine's promise may be necessary to avoid injustice.  TST alleges that Belle Plaine violated its promise and breached its contractual agreement with TST by passing the rescission Resolution that prohibited TST from installing its display in the limited public forum and that "[e]nforcement of [Belle Plaine's] promise is required to prevent an injustice, including but not limited to money damages for expenses reasonably incurred in designing and constructing [TST's] veterans memorial display."  These allegations satisfy the fourth element of a promissory-estoppel claim.

The cases that Belle Plaine cites are inapposite.  *See Plymouth Foam Prods., Inc. v. City of Becker*, 120 F.3d 153 (8th Cir. 1997); *Snyder v. City of Minneapolis*, 441 N.W.2d

781 (Minn. 1989).  Both *Plymouth* and *Snyder* involved an equitable-estoppel claim, not a promissory-estoppel claim.  Belle Plaine identifies no case law that supports the analogous treatment of equitable-estoppel claims and promissory-estoppel claims.  *See Bracewell v. U.S. Bank Nat'l Ass'n*, 748 F.3d 793, 796 (8th Cir. 2014) (distinguishing between an equitable-estoppel claim and a promissory-estoppel claim); *Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 283–84 (Minn. 1975) (same).  Accordingly, the cases on which Belle Plaine relies do not apply to the circumstances here.

Belle Plaine also argues that Minnesota Statutes Section 412.201 "preclude[s] a claim that any representations made to [TST] are enforceable against [Belle Plaine] under the equitable theory of promissory estoppel."  Minnesota Statutes Section 412.201 governs when and who may contractually bind a city: "Every contract, conveyance, license, or other written instrument shall be executed on behalf of the city by the mayor and clerk, with the corporate seal affixed, and only pursuant to authority from the council."  Minn. Stat. § 412.201; *City of Geneseo v. Utils. Plus*, 533 F.3d 608, 616 (8th Cir. 2008) ("Minnesota law expressly limits the authority of any agent to contractually bind a city, county, or . . . a municipal agency without council or board approval . . . ." (citing Minn. Stat § 412.201)).  Section 412.201 precludes the *existence* of a valid contract under these circumstances.  But to assert a promissory-estoppel claim, a valid contract is not required.  Promissory estoppel "allows courts to enforce a promise on equitable grounds" in situations when "parties did not enter into a contract."  *City of St. Joseph*, 439 F.3d at 477.  Belle Plaine has not demonstrated that dismissal of TST's promissory-estoppel claim is warranted on this basis.

For these reasons, Belle Plaine's motion for judgment on the pleadings as to TST's promissory-estoppel claim is denied.

## ORDER

Based on the foregoing analysis, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED**:

1.    Defendants' motion for judgment on the pleadings, (Dkt. 27), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

2.    Counts I through VI and VIII through X are **DISMISSED WITHOUT PREJUDICE**.

3.    Plaintiff The Satanic Temple's motion for judgment on the pleadings as to Count II, (Dkt. 22), is **DENIED**.


Dated:  July 31, 2020                                             s/Wilhelmina M. Wright
                                                                            Wilhelmina M. Wright
                                                                            United States District Judge