UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Satanic Temple,

        Plaintiff,

v.

City of Belle Plaine, Minnesota,

        Defendant.

Court File No. 19-cv-1122 (WMW/LIB)

**ORDER**

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendant's Motion for Protective Order, [Docket No. 50], Plaintiff's Motion to Compel, [Docket No. 57], and Plaintiff's Corrected Motion to Amend Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64].

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Protective Order, [Docket No. 50], the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel, [Docket No. 57], and the Court **DENIES** Plaintiff's Corrected Motion to Amend Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64].

## I.      BACKGROUND AND RELEVANT FACTS

On April 25, 2019, Plaintiff The Satanic Temple initiated the present case by filing its Complaint in this Court. [Docket No. 1]. Plaintiff named as Defendants City of Belle Plaine (the "City"), City Mayor Christopher G. Meyer, City Council member Ben Stier, City Council member

Cary Coop, City Council member Paul Chard, and City Council member Theresa McDaniel in their individual and official capacities.[1] (Id. ¶¶ 6–12).

In its original Complaint, Plaintiff alleges that in August 2016, a statue of a soldier kneeling before a Christian cross, known as "Joe," was placed in the Belle Plaine Veterans Memorial Park (the "Park"), and it was removed six months later after the City was threatened with litigation because Joe's presence on public property allegedly violated the Establishment Clause of the First Amendment. (Id. ¶¶ 27–28).

On February 2, 2017, the Belle Plaine City Council (the "City Council") enacted Resolution 17-020 (the "Enacting Resolution"), which designated "a limited public forum in Veterans Memorial Park for the express purpose of allowing individuals or organizations to erect and maintain privately owned displays that honor and memorialize living or deceased veterans, branch [sic] of military and Veterans organizations affiliated with Belle Plaine." (Id. ¶¶ 17). The Enacting Resolution stipulated that applications to erect a display within the limited public forum in the Park be submitted to the City Administrator, set parameters for the design and placement of permitted displays, placed the burden of maintaining the displays on the applicants, required applicants to carry $1,000,000 liability coverage on the displays, disassociated the speech of the applicants from the City itself, and limited the duration of the displays to one year with an option to reapply. (Id. ¶¶ 18–25). In addition, the Enacting Resolution "provided that display permits could be terminated on ten days' written notice by the City Administrator '[i]n the event the City desires to close the limited public forum or rescind this policy.'" (Id. ¶ 26) (alteration in original) (quoting Ex. 1 [Docket No. 1-1], at 1–3).

---

[1] Plaintiff only names Ms. McDaniel in her individual capacity. (Id. ¶ 12).

On April 8, 2017, Joe was erected once again in the Park pursuant to the Enacting Resolution. (Id. ¶ 28). On February 28, 2017, Plaintiff submitted an application to erect a display in the limited public forum. (Id. ¶ 29). On March 29, 2017, that application was approved by City Administrator Michael J. Votca, and Plaintiff received a permit to erect its display in the Park for one year. (Id.). Plaintiff constructed its display, (the "Display"), obtained the required liability insurance, notified the City Administrator that the Display was complete, and asked for assistance in its installation, which was agreed to. (Id. ¶ 30).

Nevertheless, prior to installation of the Display, the City Council unanimously passed Resolution 17-090 (the "Recission Resolution") which rescinded the Enacting Resolution. (Id. ¶ 31). At the time the Recission Resolution was approved, only two permits had been granted: one for Joe and one for Plaintiff's Display. (Id. ¶ 32). The Recission Resolution "stated that 'the City Council has determined that allowing privately-owned memorials of displays in its Park no longer meets the intent or purpose of the Park.'" (Id. ¶ 35) (quoting Ex. 5 [Docket No. 1-1], at 10). The Rescinding Resolution also "stated that 'the City Council has also determined that the continuation of the limited public forum may encourage vandalism in the Park, reduce the safety, serenity, and decorum of the Park, unnecessarily burden City staff and law enforcement, and negatively impact the public's health, safety and welfare.'" (Id. ¶ 36) (quoting Ex. 5 [Docket No. 1-1], at 10). However, Plaintiff alleges that there had been no vandalism, complaints, or safety problems, and at the time the Rescinding Resolution was passed, there were no displays in the Park because the Belle Plaine Veterans Club had voluntarily removed Joe at Defendants' request in advance of the Rescinding Resolution. (See, Id. ¶¶ 32–34, 37; see also, Id. ¶¶ 38–39).

Plaintiff alleges that the reasons for passing the Rescinding Resolution were pretextual to discriminate against Plaintiff, and that the City explained in a July 18, 2017, press release that the

"limited public forum had been terminated because of free speech controversy between religious and non-religious communities that had attracted regional and national attention, promoted divisiveness among residents of Belle Plaine, and portrayed the City in a negative light." (Id. ¶ 40–41).

Based on those factual allegations, Plaintiff's original Complaint asserted ten causes of action against Defendants. Count I asserted a Free Exercise Clause claim, Count II asserted a free speech claim, Count III asserted an equal protection claim, Count IV asserted a Contract Clause claim, Count V asserted a claim under the Religious Land Use and Institutionalized Persons Act of 2000, Count VI asserted a breach of contract claim, Count VII asserted a promissory estoppel claim; Count VIII asserted an impairment of contract claim under the Minnesota Constitution, Count IX asserted a free exercise of religion claim under the Minnesota Constitution, and Count X asserted a freedom of speech and association claim under the Minnesota Constitution. (Id. ¶¶ 46–134).

On August 6, 2019, the Parties filed their Rule 26(f) Report. [Docket No. 14]. In that Report, the Parties indicated that they "agree[d] that this is not a heavily document intensive case." (Id. at 6). The Parties also indicated that they had "both stated their intention to move for judgment on the pleadings," and they sought "to coordinate a schedule for presenting cross-motions for judgment on the pleadings to the Court." (Id. at 5–6).

On August 15, 2019, this Court issued its Pretrial Scheduling Order for this case. [Docket No. 18]. Pursuant to the Pretrial Scheduling Order, the deadline for motions to amend the pleadings was October 15, 2019, the deadlines for expert disclosures were June 30, 2020, and August 31, 2020, the deadline for discovery was December 4, 2020, the non-dispositive motion heard-by

deadline was January 5, 2021, the deadline for dispositive motions is February 5, 2021, and the trial ready date is June 5, 2021. (Id.).

On December 31, 2019, the Parties filed cross-motions for judgment on the pleadings. [Docket Nos. 22, 27]. Plaintiff sought judgment on the pleadings in reference to its First Amendment free speech claim asserted as Count II of its original Complaint, and Defendants sought judgment on the pleadings in reference to each of Plaintiff's claims and dismissal of Plaintiff's original Complaint in its entirety. (Id.).[2]

On July 31, 2020, Judge Wright issued an Order granting in part and denying in part Defendants' motion for judgment on the pleadings and denying Plaintiffs' motion for judgment on the pleadings. [Docket No. 46]. Judge Wright granted Defendants judgment on the pleadings for Counts I–VI and VIII–X, but denied judgment on the pleadings for Plaintiff's promissory estoppel claim alleged as Count VII. (Id.). Counts I–VI and VIII–X were dismissed without Prejudice. (Id. at 23). All claims against the individual Defendants were dismissed, and only the City remains as a Defendant in this case. (Id. at 6–7).

In reference to the promissory estoppel claim, Judge Wright found that Plaintiff has sufficiently alleged that: the permit to erect a display in the Park that the City issued to Plaintiff was a clear and definite promise; Plaintiff detrimentally relied on that promise by constructing the Display and obtaining liability insurance; the City should have reasonably expected that Plaintiff would expend time and resources to construct the Display; and enforcement of the City's promise may be necessary to avoid injustice because Plaintiff alleges that the City violated its promise by passing the Rescinding Resolution, and as a result, Plaintiff alleges it suffered money damages.

---

[2] On February 15, 2020, Plaintiff's current counsel, Mr. Juran, filed his Notice of Appearance on CM/ECF, and Plaintiff's previous counsel filed their Notices of Withdrawal. [Docket Nos. 36–38]. Plaintiff's other current counsel, Mr. Kezhaya, filed a motion for admission pro hac vice on February 19, 2020. [Docket No. 41].

On October 15, 2020, Plaintiff served its first set of discovery requests on the City. (Ex. 15 [Docket No. 70-1], at 86–96).[3]

On November 4, 2020, Plaintiff indicated its intention to amend its Complaint and requested the City's position on amending the scheduling order to set the deadline to amend the pleadings out two months from that date, as well as, to allow for an additional six months of discovery. (Ex. 5 [Docket No. 70-1], at 38).

On November 6, 2020, Plaintiff noticed the deposition of City Council Member Cary Coop to take place on the morning of November 13, 2020, the deposition of City Attorney Robert J. V. Vose to take place on the afternoon of November 13, 2020, the deposition of City Mayor Christopher G. Meyer to be held on November 17, 2020, and a Rule 30(b)(6) deposition of the City to take place on November 19, 2020. (Ex. 1[ Docket No. 53-1], at 8).

Also on November 6, 2020, defense counsel objected to Plaintiff taking depositions of the Mayor or any City Council members and stated that the City would not consent to such depositions. (Ex. 2 [Docket No. 53-1], at 13–14). On November 9, 2020, defense counsel objected to Plaintiff taking the City Attorney's deposition and stated that the city would not consent to such a deposition. (Ex. 3 [Docket No. 53-1], at 18]). Defense counsel also objected to the scope of the noticed Rule 30(b)(6) deposition and proposed that it be narrowed, and defense counsel stated that the City would not stipulate to extending the deadlines in the Pretrial Scheduling Order. (Id. at 17–19).

On November 11, 2020, Plaintiff's counsel stated that Plaintiff would not withdraw the proposed deposition notices, but that it would move the depositions of the Mayor, City Council member Coop, and the City Attorney to December 1, 2020. (Ex. 5 [Docket No. 53-1], at 30).

---

[3] Neither Party has informed this Court when the City responded to Plaintiff's discovery requests.

Plaintiff's counsel also stated his belief that the Parties were at an impasse on the issue of Rule 30(b)(6) deposition topics. (Id.).

## II.     DEFENDANT'S MOTION FOR PROTECTIVE ORDER, [Docket No. 50], and PLAINTIFF'S MOTION TO COMPEL [Docket No. 57]

On November 30, 2020, Defendant filed its Motion for Protective Order. [Docket No. 50]. Defendant moves this Court for a protective order: (1) prohibiting Plaintiff from taking a deposition of the City Attorney, Robert J. V. Vose; (2) prohibiting Plaintiff from taking depositions of the City Mayor, Christopher G. Meyer, and City Council members; and (3) prohibiting a Rule 30(b)(6) deposition of the City after the discovery deadline, or in the alternative, limiting the scope of matters for examination in Plaintiff's notice of Rule 30(b)(6) deposition to those matters that are relevant to Plaintiff's promissory estoppel claim. (Mem. in Supp. [Docket No. 52], at 1–2).[4]

On December 1, 2020, Plaintiff filed its Motion to Compel. [Docket No. 57]. Plaintiff seeks an Order of this Court compelling: (1) a deposition of the City Attorney; (2) the depositions of Mayor Meyer and City Council member Cary Coop; (3) a Rule 30(b)(6) deposition of the City on twenty-four specified topics; and (4) Defendant to amend and supplement its Responses to Request for Production of Documents Nos. 5, 6, 8, and 15. (Mem. In Supp. [Docket No. 58]).[5]

### A.  Standard of Review

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount

---

[4] Defendant requests an award of expenses, including attorneys' fees, incurred in bringing its motion for protective order. (Def.'s Mot. for Protective Order [Docket No. 50]; Mem. in Supp. [Docket No. 52]). The Court **DENIES** Defendant's request for expenses and attorneys' fees.

[5] Plaintiff also requests an award of sanctions, including attorneys' fees incurred in bringing its motion to compel, as well as, in responding to Defendant's motion for protective order. (See, Plf.'s Mot. to Compel [Docket No. 57]; Mem. in Supp. [Docket No. 58]; Mem. in Opp'n [Docket No. 67]). The Court **DENIES** Plaintiff's requests for sanctions and attorneys' fees.

in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts construe Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). However, the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation. See e.g., Sierrapine v. Refiner Prods. Mfg., Inc., 275 F.R.D. 604, 609 (E.D. Cal. 2011). As such, the party seeking discovery is required to make a threshold showing of relevance before production of information is required. Hofer, 981 F.2d at 380.

In addition, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990)). "The party resisting production bears the burden of establishing lack of relevancy or undue burden." St. Paul Reinsurance Co. v. Com. Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000) (citations omitted).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Federal Rule of Civil Procedure 37(a)(3) provides for various motions to compel disclosure or compel discovery depending on the failure of the other party. Specifically, the Court may compel a discovery response if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

A party generally, with certain exceptions, may depose any person without leave from the Court. Fed. R. Civ. P. 30(a)(1); but see, Fed. R. Civ. P. 30(a)(2) (exceptions when leave is required). However, Rule 26(c) allows the Court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). "The party seeking the order . . . bears the burden of establishing the requisite 'good cause.'" Northbrook Digital, LLC v. Vendio Servs., 625 F. Supp. 2d 728, 734 (D. Minn. 2008). Nevertheless, the party seeking discovery is required to make a threshold showing of relevance before production of information is required. Hofer, 981 F.2d at 380.

### B. Analysis

As already noted, Defendant moves this Court for a protective order: (1) prohibiting Plaintiff from taking a deposition of the City Attorney; (2) prohibiting Plaintiff from taking depositions of Mayor Meyer and City Council members; and (3) prohibiting a Rule 30(b)(6) deposition of the City after the discovery deadline, or in the alternative, limiting the scope of matters for examination in Plaintiff's notice of Rule 30(b)(6) deposition. (Def.'s Mot. for Protective Order [Docket No. 50]; Mem. in Supp. [Docket No. 52], at 1–2).

Plaintiff seeks an Order of this Court compelling: (1) a deposition of the City Attorney; (2) the depositions of Mayor Meyer and City Council member Coop; (3) a Rule 30(b)(6) deposition of the City on twenty-four specified topics; and (4) Defendant to amend and supplement its Responses to Request for Production of Documents Nos. 5, 6, 8, and 15. (Plf.'s Mot. to Compel [Docket No. 57]; Mem. in Supp. [Docket No. 58]).

### i.   Deposition of the City Attorney

Plaintiff asserts that the purpose of deposing the City Attorney is to determine the motives behind adopting the Enacting Resolution and the Rescinding Resolution. (See, e.g., Mem. in Supp. [Docket No. 58], at 6, 9; Mem. in Opp'n [Docket No. 67], at 12–13). Plaintiff contends that a deposition of the City Attorney is crucial because "[o]nly the City Attorney can speak to the real intent behind the Enacting Resolution," and "[t]he same is true for the Rescinding Resolution." (Mem. in Supp. [Docket No. 58], at 9). Plaintiff also contends that this information "will shed light on whether discrimination was at play." (Id. at 6).

The only remaining claim in the present case is Plaintiff's promissory estoppel claim. "Promissory estoppel is an equitable doctrine that "impl[ies] a contract in law where none exists in fact." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (quoting Grouse v. Grp. Health Plan, Inc., 306 N.W.2d 114, 116 (Minn. 1981)). As such, promissory estoppel is quasi-contractual in nature. See, Grouse, 306 N.W.2d at 116 (noting promissory estoppel is a principle of contract law). "A claim for promissory estoppel has three elements: (1) "a clear and definite promise was made;" (2) "the promisor intended to induce reliance and the promisee in fact relied to his or her detriment;" and (3) "the promise must be enforced to prevent injustice." Martens, 616 N.W.2d at 746.

Plaintiff contends that "[t]he 'injustice' prong of promissory estoppel invites the judicial question of why the City made its promise and why the City did not fulfill its promise." (Mem. in Supp. [Docket No. 58], at 3). Plaintiff further contends that "[i]n a promissory estoppel case against a city, a plaintiff must prove more than that the City broke a clear and definite promise; the Plaintiff must also adduce evidence of 'some degree of malfeasance' or 'bad faith.'" (Mem. in Opp'n [Docket No. 67], at 5–6).

Plaintiff conflates promissory estoppel with equitable estoppel. Indeed, Plaintiff cites to City of N. Oaks v. Sarpal, 797 N.W.2d 18 (Minn. 2011), in support of its contention that it is required to show bad faith to prove its promissory estoppel claim. (Mem. in Supp. [Docket No. 58], at 3; Mem. in Opp'n [Docket No. 67], at 5). However, Sarpal involved a claim of equitable estoppel.[6] 797 N.W.2d 18. As already noted by Judge Wright, cases involving equitable estoppel claims "do not apply to the circumstances here." (See, Order [Docket No. 46], at 21–22); see also, Bracewell v. U.S. Bank Nat. Ass'n, 748 F.3d 793, 796 (8th Cir. 2014) (alteration in original) (quoting 28 Am. Jur.2d Estoppel & Waiver § 34 (2014)) ("As one treatise summarizes the difference, '[a] claim is more appropriately analyzed under the doctrine of promissory estoppel, not equitable estoppel, where representations upon which the plaintiff allegedly relied are more akin to statements of future intent than past or present fact.'").

The third "injustice" prong of promissory estoppel asks whether the promise must be enforced to prevent injustice. Martens, 616 N.W.2d at 746. "[T]he test is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice." Cohen v. Cowles Media Co., 479 N.W.2d 387, 391 (Minn. 1992). "[T]his is purely a question of law for the court and involves public policy considerations." Kattke v. Indep. Order of Foresters, No. 00-276ADM/AJB, 2001 WL 557599, at *4 (D. Minn. 2001), aff'd, 30 Fed. App'x 660 (8th Cir. 2002); see also, Cohen, 479 N.W.2d at 391 ("[T]his is a legal question for the court, as it involves a policy decision."); Feris v. Bodycote Lindberg Corp., No. 01-1689(MJD/JGL), 2003 WL 21517363, at *4 (D. Minn. June 30, 2003) ("The Court must consider the reasonableness of

---

[6] In Sarpal, the Minnesota Supreme Court stated that the four required elements to establish equitable estoppel against a government entity are (1) "there must be 'wrongful conduct' on the part of an authorizing government agent;" (2) "the party seeking the equitable relief must reasonably rely on the wrongful conduct;" (3) "the party must incur a unique expenditure in reliance on the wrongful conduct;" and (4) "the balance of the equities must weigh in favor of estoppel." 797 N.W.2d at 25 (emphasis added). The Minnesota Supreme Court also stated that "wrongful conduct is the most important element of equitable estoppel," and "the wrongful conduct element require[s] some degree of malfeasance." Id. (emphasis added). The Minnesota Supreme Court did not discuss promissory estoppel in Sarpal.

the promisee's reliance and weigh the public policies in favor of enforcing bargains and preventing unjust enrichment."); <u>Meriwether Minn. Land & Timber v. State</u>, 818 N.W.2d 557, 568–69 (Minn. Ct. App. 2012) (weighing public policy interests to determine whether enforcement of promise was required to prevent injustice).

Here, the "injustice" to Plaintiff is the time and resources that Plaintiff expended in reliance on the City's promise, it is not any alleged discrimination. <u>See</u>, <u>Olson v. Synergistic Techs. Bus. Sys., Inc.</u>, 628 N.W.2d 142, 152 (Minn. 2001) ("[P]romissory estoppel is an equitable form of action based on good-faith reliance."); <u>see also</u>, <u>Doll v. U.S. W. Commc'ns, Inc.</u>, 85 F. Supp. 2d 1038, 1045 (D. Colo. 2000) (noting promissory estoppel claim did not rely on the improper motive at issue in wrongful discharge claims). The third prong of Plaintiff's promissory estoppel claim in the present case simply asks whether public policy dictates that the City's promise should be enforced to prevent the harm caused to Plaintiff by expending resources in reliance on that promise. Accordingly, City's motives behind adopting the Enacting Resolution and the Rescinding Resolution are not relevant to the public policy considerations involved in the third "injustice" prong of Plaintiff's promissory estoppel claim.

The threshold inquiry with regard to discovery issues is whether the moving party seeks discoverable material. <u>Prokosch v. Catalina Lighting, Inc.</u>, 193 F.R.D. 633, 635 (D. Minn. 2000) (citing <u>Shelton v. Am. Motors</u>, 805 F.2d 1323, 1326 (8th Cir. 1986)). Pursuant to Federal Rule of Civil Procedure 26(b)(1), the scope of discoverable material is limited to that which is relevant to the parties' claims or defenses. <u>See, e.g.</u>, <u>Mallak v. Aitkin Cty.</u>, No. 13-cv-2119 (DWF/LIB), 2016 WL 8607391, at *6 (D. Minn. June 30, 2016), <u>aff'd</u>, 2016 WL 8607392 (D. Minn. Sept. 29, 2016) (citing <u>Sierrapine</u>, 275 F.R.D. at 609). And the party seeking discovery is required to make a

threshold showing of relevance before production of information is required. <u>Hofer</u>, 981 F.2d at 380.

Here, as already noted, improper motive is not an element of promissory estoppel. Moreover, the third "injustice" prong of Plaintiff's promissory estoppel claim does not hinge in any way on the motives behind adopting the Enacting Resolution or the Rescinding Resolution. Simply put, why the City broke its promise is <u>not</u> relevant to Plaintiff's promissory estoppel claim. As such, the Court finds that the information sought by a deposition of the City Attorney is not relevant to any claims or defenses in this case.

Therefore, Defendant's Motion for Protective Order, [Docket No. 50], is **GRANTED** to the extend it seeks a protective order prohibiting Plaintiff from taking a deposition of the City Attorney, and Plaintiff's Motion to Compel, [Docket No. 57], is **DENIED** to the extent that it seeks an Order of this Court compelling a deposition of the City Attorney.

### ii. Depositions of Mayor Meyer and City Council members

Plaintiff asserts that the purpose of deposing Mayor Meyer and City Council member Coop is to determine the motives of the City behind adopting the Enacting Resolution and the Rescinding Resolution. (<u>See, e.g.</u>, Mem. in Supp. [Docket No. 58], at 1; Mem. in Opp'n [Docket No. 67], at 1–2).

As already noted, the City's motivations in adopting the Enacting Resolution and the Rescinding Resolution are not relevant to Plaintiff's promissory estoppel claim. <u>Martens</u>, 616 N.W.2d at 746; <u>Grouse</u>, 306 N.W.2d at 116. That claim is not contingent on why the City broke its promise; the "injustice" to Plaintiff is the time and resources that Plaintiff expended in reliance on the City's promise. <u>See, e.g.</u>, <u>Kattke</u>, 2001 WL 557599, at *4; <u>Cohen</u>, 479 N.W.2d at 391.

Therefore, this Court finds that the information sought by the depositions of Mayor Meyer and City Council member Coop is <u>not</u> relevant to any claims or defenses in this case.

Accordingly, Defendant's Motion for Protective Order, [Docket No. 50], is **GRANTED** to the extend it seeks a protective order prohibiting Plaintiff from taking the depositions of Mayor Meyer and City Council members, and Plaintiff's Motion to Compel, [Docket No. 57], is **DENIED** to the extent that it seeks an Order of this Court compelling the depositions of Mayor Meyer and City Council member Coop.[7]

### i.  Rule 30(b)(6) Deposition

On November 6, 2020, Plaintiff noticed a Rule 30(b)(6) deposition of the City to take place on November 19, 2020. (Ex. 1 [Docket No. 53-1], at 5–7). On November 9, 2020, Defendant objected to the scope of the noticed Rule 30(b)(6) deposition and proposed that it be narrowed. (<u>See</u>, Ex. 3 [Docket No. 53-1], at 17–19). Specifically, Defendant agreed to a Rule 30(b)(6) deposition that was limited to the following topics: "Implementation of the limited public forum;" Plaintiff's "request to place a display;" "Meetings and participants constituting the internal decision-making about [Plaintiff's] request;" "Acceptance of [Plaintiff's] request to place the display;" and Defendant's "communications with [Plaintiff] between January 1, 2017, and July 1, 2017." (<u>Id.</u> at 17–18). On November 11, 2020, Plaintiff's counsel stated his belief that the Parties

---

[7] The Court reiterates that this decision is based solely on the fact that the information sought by these depositions is not relevant to the claims and defenses in this case. The Court does <u>not</u> find that these depositions are precluded because the City Mayor and City Council members are "high-ranking government officials." <u>See</u>, <u>S.L. v. St. Louis Metro. Police Dep't Bd. of Comm'rs</u>, No. 4:10-CV-2163 (CEJ), 2011 WL 1899211, at *2 (E.D. Mo. May 19, 2011) (collecting cases and finding that a case-by-case determination is required as there is no bright-line rule about who qualifies as a high-ranking government official, and noting that courts have applied the doctrine to "the Secretary of the Treasury, the former EPA administrator and former EPA regional administrator, the president of a county Board of Supervisors, mayors, the former chair of the Consumer Product Safety Commission, and the deputy White House Counsel. Officers who have not been found to be 'high-ranking officials' include the chief of police, and an assistant administrator with FEMA"); <u>see also</u>, <u>Hensel v. Little Falls, MN</u>, No. 12-cv-1160 (RHK/LIB) (D. Minn. May 17, 2013) (finding the mayor and city council members of Little Falls, Minnesota who served part-time were not "high-ranking" government officials and denying request for protective order on those grounds).

were at an impasse on the issue of Rule 30(b)(6) deposition topics. (Ex. 5 [Docket No. 53-1], at 30). On November 30, 2020, Defendant filed its present motion for protective order, [Docket No. 50], and on December 1, 2020, Plaintiff filed its present motion to compel, [Docket No. 57].

Defendant now contends that because Plaintiff previously rejected Defendant's proposal to limit the scope of the Rule 30(b)(6) deposition without making a reasonable counterproposal, Plaintiff allowed the December 4, 2020, discovery deadline to lapse without conducting the proposed Rule 30(b)(6) deposition. Therefore, Defendant argues that this Court should prohibit Plaintiff from taking an untimely Rule 30(b)(6) deposition. (See, Mem. in Supp. [Docket No. 52], at 21–24; Mem. in Opp'n [Docket No. 69], at 16–17). This Court disagrees.

Plaintiff noticed the Rule 30(b)(6) deposition to be taken before the December 4, 2020, discovery deadline. (See, Ex. 1[ Docket No. 53-1], at 5–7). After Defendant refused to submit to the deposition as noticed and the Parties were unable to resolve the dispute, Plaintiff also filed its present motion to compel before the discovery deadline. (See, Plf.'s Mot. to Compel, [Docket No. 57]). Therefore, this Court concludes that Plaintiff's noticed Rule 30(b)(6) deposition was timely.

Defendant next argues, in the alternative, that this Court should limit the scope of the noticed Rule 30(b)(6) deposition to those topics which are relevant to Plaintiff's promissory estoppel claim, which Defendant contends are those five topics that it already agreed to on November 9, 2020, (See, Mem. in Supp. [Docket No. 52], at 24).

Plaintiff argues that all twenty-four of the noticed Rule 30(b)(6) topics are relevant to the promissory estoppel claim. (Mem. in Supp. [Docket No. 58], at 11–20; Mem. in Opp'n [Docket No. 67], at 16–17). Plaintiff's argument is again based on its erroneous assertion that the City's motives in adopting the Enacting Resolution and the Rescinding Resolution are relevant to its promissory estoppel claim. Indeed, Plaintiff specifically contends that "all of the matters are

15

plainly within the scope of discovery because all pertain to why the City made its promise and why the City broke its promise." (Mem. in Opp'n [Docket No. 67], at 16; see also, Mem. in Supp. [Docket No. 58], at 12–20). However, as already noted, Plaintiff's sole remaining claim is one for promissory estoppel, improper motive is not an element of promissory estoppel, and the third "injustice" prong of Plaintiff's promissory estoppel claim does not hinge in any way on the motives behind adopting the Enacting Resolution or the Rescinding Resolution. See supra.

This Court has reviewed each of Plaintiff's noticed Rule 30(b)(6) deposition topics except those to which Defendant has already agreed. The Court concludes that all of the topics are directly and exclusively aimed at determining the City's motives and whether the City discriminated against Plaintiff because of its religious views. Plaintiff expressly acknowledges as much in its briefing on this matter. (See, Mem. in Supp. [Docket No. 58], at 12–20; see also, Ex. 4 [Docket No. 70-1], at 28–30). As such, the Court finds that each of Plaintiff's noticed Rule 30(b)(6) deposition topics, excluding those already agreed to by Defendant, are not relevant to any claims or defenses in this case. See, Hofer, 981 F.2d at 380. Therefore, Plaintiff shall not inquire into such topics during the Rule 30(b)(6) deposition of the City. See, e.g., Wipers Recycling, LLC, No. 08-5019 (PJS/AJB), 2011 WL 13136272, at *12 (D. Minn. Mar. 21, 2011) (prohibiting inquiry about topics that were no longer relevant during Rule 30(b)(6) deposition). Nevertheless, Plaintiff shall be permitted to inquire into those topics that Defendant had already agreed are relevant to Plaintiff's promissory estoppel claim.[8] See, e.g., Id. (quoting Fed. R. Civ. P. 26(c)(1)) (allowing inquiry into relevant topics at Rule 30(b)(6) deposition where no showing that those "topics would cause 'annoyance, embarrassment, oppression, or undue burden or expense'").

---

[8] Because the Parties have already agreed those topics are relevant, it is not necessary for the Court to analyze their relevance here.

Accordingly, Defendant's Motion for Protective Order, [Docket No. 50], is **GRANTED in part** and **DENIED in part** to the extend it seeks a protective order prohibiting Plaintiff from taking a Rule 30(b)(6) deposition of the City, and Plaintiff's Motion to Compel, [Docket No. 57], is **GRANTED in part** and **DENIED in part** to the extent that it seeks an Order of this Court compelling a Rule 30(b)(6) deposition of the City on twenty-four specified topics. Defendant City of Belle Plaine is required, within fourteen (14) days of the date of this Order, to designate and produce a Rule 30(b)(6) deponent to testify to the following topics: (1) implementation of the limited public forum concept; (2) Plaintiff's request to place a display; (3) meetings and participants constituting the internal decision-making about Plaintiff's request; (4) acceptance of Plaintiff's request to place the Display; and (5) the City's communications with Plaintiff between January 1, 2017, and July 1, 2017.

### ii. Requests for Production of Documents

**REQUEST FOR PRODUCTION NO. 5:** All non-privileged documents that constitute, describe, reflect, or relate in any way to communications between Defendant and any non-party related to the allegations in Plaintiff's Complaint and Defendant's Answer, including but not limited to communications from or sent to the City Council, Planning Commission, Planning Department, zoning administrator, employees, and any other department in the City. The foregoing includes without limitation all recordings of interactions the City has had with any nonparty concerning the allegations in Plaintiff's Complaint or Defendant's Answer.

**ANSWER:** The City objects to this Request to the extent it seeks documents that are not relevant to the remaining claim in this lawsuit. The Court dismissed all Plaintiff's claims except the promissory-estoppel claim against the City. See Satanic Temple v. City of Belle Plaine, ---F. Supp. 3d ---, 2020 WL 4382756 (D. Minn. July 31, 2020). That claim against the City involves three questions: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001) (citing Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995)). Subject to and without waiver of these objections, the City responds that non-privileged, responsive documents that relate to the remaining claim in the lawsuit will be produced.

(Mem. in Supp. [Docket No. 58], at 23–24).

> **REQUEST FOR PRODUCTION NO. 6:** All internal communications of the City relating in any way to the Display from January 1, 2017 to the present. "Internal communications" includes without limitation transcripts of any City Council meetings addressing the Display; audio or video recordings of any City Council meetings addressing the Permit; meeting minutes for any City Council meetings addressing the Permit.

> **Answer:** The City objects to this Request to the extent it seeks documents that are not relevant to the remaining claim in this lawsuit. The Court dismissed all Plaintiff's claims except the promissory-estoppel claim against the City. See Satanic Temple v. City of Belle Plaine, ---F. Supp. 3d ---, 2020 WL 4382756 (D. Minn. July 31, 2020). That claim against the City involves three questions: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001) (citing Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995)). Subject to and without waiver of these objections, the City responds that non-privileged, responsive documents that relate to the remaining claim in the lawsuit will be produced.

(Id. at 21).

> **REQUEST FOR PRODUCTION NO. 8:** All documents in Defendant's possession, which discuss or relate in any way to Plaintiff or its members. Without limiting the breadth of this request, Plaintiff particularly seeks Defendant's copies of Plaintiff's Permit Application, communications surrounding it, and any collateral statements about Plaintiff or its membership.

> **Answer:** The City objects to this Request to the extent it seeks documents that are not relevant to the remaining claim in this lawsuit. The Court dismissed all Plaintiff's claims except the promissory-estoppel claim against the City. See Satanic Temple v. City of Belle Plaine, ---F. Supp. 3d ---, 2020 WL 4382756 (D. Minn. July 31, 2020). That claim against the City involves three questions: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001) (citing Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995)). Subject to and without waiver of these objections, the City responds that non-privileged, responsive documents that relate to the remaining claim in the lawsuit will be produced.

(Id. at 21–22).

**REQUEST FOR PRODUCTION NUMBER 15:** Produce any 19-cv-1122–memorandum of law in support of TST's motion to compel legal memoranda, notes, emails, or any other written document evidencing a communication between any member of the City Council and the City Attorney pertaining to any display or any expected display in the Park between August 1, 2016 and July 30, 2017 (i.e. including but not limited to Joe and the Display).

**ANSWER:** The City objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, work product doctrine or other applicable privileges and immunities. The City further objects to this Request to the extent it seeks documents that are not relevant to the remaining claim in this lawsuit. The Court dismissed all Plaintiff's claims except the promissory-estoppel claim against the City. See Satanic Temple v. City of Belle Plaine, ---F. Supp. 3d ---, 2020 WL 4382756 (D. Minn. July 31, 2020). That claim against the City involves three questions: "(1) Was there a clear and definite promise? (2) Did the promisor intend to induce reliance, and did such reliance occur? (3) Must the promise be enforced to prevent injustice?" Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001) (citing Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995)).

(Id. at 9–10).

Request for Production of Documents No. 5 seeks communications between Defendant and any nonparties related to the allegations in Plaintiff's complaint. (Id. at 23). Request for Production of Document Nos. 6 and 7 seek the City's internal communications which relate in any way to the Display, Plaintiff, or Plaintiff's members. (Id. at 21–22). And Request for Production of Documents No. 15 seeks communications between the City Attorney and City Council members relating to any display or expected display in the Park. (Id. at 9–10).

Each of these Requests is clearly overbroad and seeks information that is not relevant to Plaintiff's sole remaining promissory estoppel claim. Again, Plaintiff's promissory estoppel claim does not hinge in any way on the motives behind adopting the Enacting Resolution or the Rescinding Resolution. See, supra. Although some limited portion of the discovery sought by these Requests may be marginally relevant to Plaintiff's promissory estoppel claim, these Requests also seek large amounts discovery that is plainly not relevant. See, e.g., McGinnis v. Soo Line R.R.

Co., No. 12-795 (DSD/JJK), 2013 WL 1748710, at *2 (D. Minn. Apr. 23, 2013) (citing WWP, Inc. v. Wounded Warriors Fam. Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011)) ("Even if a request for production seeks relevant information, however, it may nonetheless be denied if it is overbroad."). Thus, Defendant is not required to produce any materials in response to Request for Production Nos. 5, 6, 8, or 15. See, Hofer, 981 F.2d at 380.

Therefore, Plaintiff's Motion to Compel, [Docket No. 57], is **DENIED** to the extent that it seeks an Order of this Court compelling Defendant to amend and supplement its Responses to Request for Production of Documents Nos. 5, 6, 8, and 15.

## III.   PLAINTIFF'S CORRECTED MOTION TO AMEND SCHEDULING ORDER AND FOR LEAVE TO AMEND THE COMPLAINT; OR, ALTERNATIVELY, FOR A CONTENTSED NON-SUIT [Docket No. 64]

On December 1, 2020, Plaintiff filed its original Motion to Amend the Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit. [Docket No. 56]. That motion was stuck as filed in error. On December 4, 2020, Plaintiff filed its corrected motion. (Plf.'s Corrected Mot. to Am. the Scheduling Order and for Leave to Am. the Compl.; or, Alternatively, for a Contested Non-Suit [Docket No. 64]). In its corrected motion, Plaintiff moves this Court for and Order amending the Pretrial Scheduling Order and granting leave for Plaintiff to amend its Complaint, or in the alternative, for an Order granting it a contested non-suit. (Mem. in Supp. [Docket No. 52], at 1–2).

### A.  Standard of Review

Rule 16(b) governs the Court's modification of pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the" designated judge "must issue a scheduling order" which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b). Pursuant to Federal Rule of Civil Procedure

16(b)(4) and Local Rule 16.3(b), a party who moves to modify a scheduling order must demonstrate good cause to do so.

Likewise, amending a complaint outside of the time frame established in a district court's scheduling order "requires a showing of good cause." See, Harris v. FedEx Nat'l LTL, Inc., 760 F.3d 780, 786 (8th Cir. 2014); see also, Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) ("If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule."). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Id. (citing Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006); Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment)). "The 'good cause' standard requires a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." Burris v. Versa Prods., Inc., No. 7-cv-3938 (JRT/JJK), 2009 WL 3164783, at *4 (D. Minn. Sept. 29, 2009). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Id. (citing Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)).

Determining whether or not good cause through due diligence has been shown falls within the Court's broad discretion. See, Portz v. St. Cloud State Univ., No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017).

### B. Analysis

#### i. Pretrial Scheduling Order

Plaintiff seeks an Order of this Court amending the Pretrial Scheduling Order to extend the the deadline to amend pleadings, as well as, the discovery deadline and every other deadline in this case. (Plf.'s Corrected Mot. to Am. the Scheduling Order and for Leave to Am. the Compl.; or, Alternatively, for a Contested Non-Suit [Docket No. 64]).

Plaintiff asserts three reasons why this Court should find good cause exists to amend the Pretrial Scheduling Order. (See, e.g., Mem. in Supp. [Docket No. 65], at 2). Specifically, Plaintiff contends that the Pretrial Scheduling Order should be amended "to accommodate the timing of the order of dismissal, the replacement of [Plaintiff's] counsel of record, and the City's refusal to permit adequate discovery." (Id.).

As set forth above, pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b), a party who moves to modify a scheduling order must demonstrate good cause to do so. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Sherman, 532 F.3d at 716–17. And "[t]he 'good cause' standard requires a demonstration that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." Burris, 2009 WL 3164783, at *4. Here, Plaintiff has neither been diligent in attempting to meet the Pretrial Scheduling Order's existing deadlines, nor in seeking to amend the Pretrial Scheduling Order.

Plaintiff first argues that the Pretrial Scheduling Order should be amended to accommodate the timing of the July 31, 2020, Order on the Parties' cross-motions for judgment on the pleadings because the Parties did not engage in discovery while those motions were pending. (See, Mem. in Supp [Docket No. 65], at 2–7). Plaintiff asserts that it needs to find an expert to calculate its damages, but the July 31, 2020, Order "was entered too late for either party to timely engage experts." (Id. at 3, 7). However, the deadline for Plaintiff to disclose its experts was June 30, 2020.

(Pretrial Scheduling Order [Docket No. 18], at 4). With due diligence, Plaintiff could have moved to amend the expert disclosure deadline prior to its expiration once it became apparent the deadline would not be met, but Plaintiff did not do so. Rather, Plaintiff waited approximately five months to bring this motion. As such, Plaintiff has not shown good cause. See, Local Rule 16.3(d) ("Except in extraordinary circumstances, before the passing of a deadline a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order."); see also, E.E.O.C. v. Prod. Fabricators Inc. 285 F.R.D. 418, 421–22 (D. Minn. 2012) (finding no good cause where a motion to amend was brought three months after the expert deadlines had lapsed).

Plaintiff also asserts that the timing of the July 31, 2020, Order "left only four months on the time for discovery," and Plaintiff contends that "[f]our months was not enough time to get this case trial-ready." (Mem. in Supp. [Docket No. 65], at 3–4). Plaintiff further asserts that its "[c]ounsel has been busily investigating this case using every tool available," "[b]ut four months just isn't enough time to obtain all needed evidence to prove religious discrimination." (Id. at 6). Notably, Plaintiff does not specifically assert that four months is not enough time to obtain the evidence needed to prove promissory estoppel. (See, Mem. in Supp. [Docket No. 65]). Plaintiff's religious discrimination claims have been dismissed. (See, Order [Docket No. 46]). This Court repeats, improper motive is not an element of promissory estoppel, and the third "injustice" prong of Plaintiff's promissory estoppel claim does not hinge in any way on the motives behind adopting the Enacting Resolution or the Rescinding Resolution. See, supra.

More importantly, Plaintiff has not shown diligence in conducting discovery following the July 31, 2020, Order. For example, Plaintiff waited two-and-a-half months to serve its first set of discovery requests on October 15, 2020. (See, Ex. 15 [Docket No. 70-1], at 86–96). Plaintiff also waited over three months, until November 4, 2020, to notice its Rule 30(b)(6) deposition of the

City. (Ex. 1[ Docket No. 53-1], at 8). Plaintiff has provided no explanation for this delay. Moreover, Plaintiff waited until November 4, 2020, to even suggest amending the Pretrial Scheduling Order to Defendant. (Ex. 5 [Docket No. 70-1], at 38). Given this lack of diligence, the Court finds that Plaintiff has not shown good cause due to the timing of July 31, 2020, Order. See, Burris, 2009 WL 3164783, at *4; Sherman, 532 F.3d at 716–17; see also, Franklin for Estate of Franklin v. Peterson, No. 14-1467 (DWF/JSM), 2015 WL 13484483, at *3 (D. Minn. Aug. 21, 2015) (finding no good cause where "[n]ot only ha[d] the plaintiff not been diligent in pursuing discovery, he ha[d] not been diligent in bringing his request for an extension").

Plaintiff next contends that the Pretrial Scheduling Order should be amended to accommodate "the replacement of [Plaintiff's] counsel on record." (Mem. in Supp. [Docket No. 65], at 2). However, Plaintiff's current counsel appeared in this case in February 2020. [Docket Nos. 38, 41]. Plaintiff does not provide any explanation as to why accommodation for the replacement of counsel is now required. Further, even if accommodation were required, Plaintiff did not act diligently in waiting over eight months after its counsel was replaced to seek to amend to Pretrial Scheduling Order. Hence, Plaintiff has not shown good cause due to its replacement of counsel.

Lastly, Plaintiff contends that the Pretrial Scheduling Order should be amended due to the City's purported refusal to permit adequate discovery. (Mem. in Supp. [Docket No. 65], at 2, 4–5). Specifically, Plaintiff contends that "[t]he City blocked discovery into some core topics about this litigation," and Plaintiff lists seven topics on which it contends Defendant has improperly denied discovery. (Id. at 4–5). Each of the topics specified by Plaintiff seeks information regarding the motives behind adopting the Enacting Resolution and the Rescinding Resolution. (See, Id.). Those topics are not relevant to Plaintiff's promissory estoppel claim; hence, those topics are not

discoverable. See, Hofer, 981 F.2d at 380. As such, Defendant's purported refusal to permit adequate discovery does not establish good cause to amend the Pretrial Scheduling Order.

In sum, Plaintiff has not shown diligence in attempting to meet the deadlines in the Pretrial Scheduling Order. Moreover, Plaintiff has not shown diligence in seeking to amend the Pretrial Scheduling Order by bringing this motion. Therefore, the Court finds that Plaintiff has not now shown good cause to Amend the Pretrial Scheduling Order. See, e.g., Sherman, 532 F.3d at 716–17.; Burris, 2009 WL 3164783, at *4; Franklin for Estate of Franklin, 2015 WL 13484483, at *3.

Therefore, Plaintiff's Motion to Amend the Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64], is **DENIED** to the extent that it seeks an Order of this Court amending the Pretrial Scheduling Order.

### ii. Complaint

Plaintiff next seeks an Order of this Court granting Plaintiff leave to amend its Complaint to reassert its dismissed free exercise, free speech, and equal protection claims, and to add newly asserted Establishment Clause and Due Process Clause claims. (Plf.'s Corrected Mot. to Am. the Scheduling Order and for Leave to Am. the Compl.; or, Alternatively, for a Contested Non-Suit [Docket No. 64]).

Pursuant to the Pretrial Scheduling Order, the deadline for motions to amend the pleadings was October 15, 2019. [Docket No. 18]. Because Plaintiff is seeking to amend its Complaint outside of that deadline, Plaintiff is required to show good cause. See, Harris, 760 F.3d at 786; Popoalii, 512 F.3d at 497; Sherman, 532 F.3d at 716. For the reasons explained below, this Court finds that Plaintiff has not shown good cause.

Plaintiff prefaces its proposed Amended Complaint with an "explanatory note" which states Plaintiff's Proposed Amended Complaint "is intended to correct the pleading deficiencies

identified in the Court's order of dismissal (without prejudice) of the constitutional issues." (Proposed Am. Compl. [Docket No. 64-1] ¶ 1). Likewise, Plaintiff asserts in the present motion that it seeks leave to amend the Complaint to "correct the pleading deficiencies identified in the order of dismissal." (Plf.'s Corrected Mot. to Am. the Scheduling Order and for Leave to Am. the Compl.; or, Alternatively, for a Contested Non-Suit [Docket No. 64]; accord, Mem. in Supp. [Docket No. 65], at 1).

However, Plaintiff's mere professed intention of clarifying its original Complaint is insufficient to establish good cause. See, Unity Healthcare, Inc. v. Cnty of Hennepin, 2015 WL 12977020, at *3 (D. Minn. Mar. 10, 2015) (finding that "the plaintiffs' desire to clarify their allegations [related to recently dismissed claims] is an insufficient basis for this Court to find that there is good cause to allow an untimely amendment" and "the plaintiffs' mere desire to revive those claims to address the problems identified in the District Court's dismissal does not establish good cause"); Target Corp. v. LCH Pavement Consultants, LLC, 960 F. Supp. 2d 999, 1009 (D. Minn. 2013) (finding that the dismissal of an insufficiently pled claim after the deadline to amend pleadings had passed did not establish good cause to amend a complaint.).

Pursuant to Local Rule 16.3, a party seeking to extend a deadline after that deadline has already passed must demonstrate "extraordinary circumstances" for such an extension. Local Rule 16.3(d); see also, Coleman v. Minneapolis Pub. Sch., No. 18-cv-2283 (DSD/ECW), 2020 WL 6042394, at *3, 5 (D. Minn. Oct. 13, 2020). A court may find such extraordinary circumstances based on "the emergence of new facts." Hollander, 705 F.3d at 358. Similarly, pursuant to Rule 16(b), a party must show "good cause" to amend its Complaint after the deadline established in the Pretrial Scheduling Order. See, Harris, 760 F.3d at 786; Popoalii, 512 F.3d at 497. "Where a party files a motion after the deadline for amending the pleadings has expired, the Court asks

whether the moving party has demonstrated 'that the existing schedule [could not] reasonably be met despite the diligence of the party seeking the extension.'" Unity Healthcare, Inc., 2015WL 12977020, at *2 (alteration in original) (quoting Archer Daniels Midland v. Aon Risk Servs., Inc., 187 F.R.D. 578, 581–82 (D. Minn. 1999)). "[A] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." Target Corp., 960 F. Supp. 2d at 1008; see also, Archer Daniels Midland, 187 F.R.D. at 582 (quotation omitted) ("It hardly bears mention, therefore, that carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

Here, Plaintiff does not argue that new facts have emerged in this case. Rather, in the "explanatory note" prefacing Plaintiff's Proposed Amended Complaint, Plaintiff states that "[t]he core factual allegations are still the same." (Proposed Am. Compl. [Docket No. 64-1] ¶ 1). Upon review of Plaintiff's Proposed Amended Complaint, this Court finds that although Plaintiff seeks to add more detail to its original allegations, Plaintiff does not allege any "new" facts which could not have with due diligence been asserted in its original Complaint. Most, if not all, of the additional factual allegations that Plaintiff now seeks to allege in its Proposed Amended Complaint are matters of public record. (See, Proposed Am. Compl. [Docket No. 64-1]). Plaintiff is merely reasserting three of the same, but already dismissed, claims on the same, albeit more detailed, factual allegations. Although Plaintiff now further seeks to add two new theories of liability, they too are based on the same basic set of facts. (See, Id.).

Nothing in record presently before the Court indicates that these additional details and theories of liability could not have with due diligence been alleged in Plaintiff's original Complaint. Therefore, this Court finds that Plaintiff has not shown good cause to amend its

Complaint.[9] See, e.g., Unity Healthcare, Inc., 2015WL 12977020, at *2–4 (finding no good cause where additional factual allegations meant to "clarify" dismissed claims could have with due diligence been alleged previously); Target Corp., 960 F. Supp. 2d at 1007–09 (finding no good cause where new theories of liability could have with due diligence been asserted earlier).

Accordingly, Plaintiff's Motion to Amend the Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64], is **DENIED** to the extent that it seeks an Order of this Court granting leave for Plaintiff to amend its Complaint.

### iii. Non-Suit

Lastly, Plaintiff seeks, in the alternative, an Order of this Court granting it a contested non-suit. (Plf.'s Corrected Mot. to Am. the Scheduling Order and for Leave to Am. the Compl.; or, Alternatively, for a Contested Non-Suit [Docket No. 64]). Specifically, Plaintiff seeks leave of this Court to voluntarily dismiss its promissory estoppel claim without prejudice so that Plaintiff can reassert its constitutional claims in "a second round of litigation." (See, Mem. in Supp. [Docket No. 65], at 12–14).

---

[9] Furthermore, the Court has extensively reviewed Plaintiff's Proposed Amended Complaint, [Docket No. 64-1], and compared its proposed amended allegations with those in Plaintiff's original Complaint, [Docket No. 1], in relation to the free exercise, free speech, and equal protection claims, which Judge Wright has already found lacking but Plaintiff now seeks to reassert. This Court concludes that Plaintiff's proposed amended claims fail to correct the deficiencies observed in Judge Wright's July 31, 2020, Order. [Docket No. 46]. Thus, Plaintiff's proposed reasserted claims are futile. See, e.g., Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (quotations omitted) ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)."). Moreover, in reference to the new theories of liability that Plaintiff now seeks to assert for the first time, this Court finds that allowing Plaintiff to assert new claims at this late stage of the litigation process, after discovery has closed, and on the eve of trial would be inappropriate. See, Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380 (8th Cir. 2016) (alteration in original) (quoting Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989)) ("Moreover, '[w]hen a considerable amount of time has passed since the filing of a complaint and the motion to amend is made on the eve of trial and will cause prejudice and further delay, courts require the movant to provide some valid reason for the belatedness of the motion.'"); ARE Sikeston Ltd. P'ship v. Weslock Nat'l., Inc., 120 F.3d 820 (8th Cir. 1997) (internal quotation marks omitted) (affirming denial of leave to amend complaint where the district court "concluded that at this late stage in the proceedings it is inappropriate for the Court to allow the plaintiff to amend"); Vistaprint Tech. Ltd. v. 123Print, Inc., No. 07-2298 (JNE/AJB), 2008 WL 11464757, at *4 n.4 (collecting cases and noting that "[t]he Eighth Circuit routinely affirms denials of a motion to amend where discovery has closed," and "[t]hey also routinely uphold the denial of a motion to amend filed on the eve of trial").

Pursuant to Federal Rule of Civil Procedure 41(a)(2), after a defendant has served its answer, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side." Paulucci v. City of Duluth, 826 F.2d 780, 782 (8th Cir. 1987). In deciding whether to allow a voluntary dismissal, a court should consider "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants." Donner v. Alcoa, Inc., 709 F.3d 694, 697 (8th Cir. 2013) (quoting Thatcher v. Hanover, 659 F.3d 1212, at 1213–14 (8th Cir. 2011)). "[A] party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." Id. "A decision whether to allow a party to voluntarily dismiss a case rests upon the sound discretion of the court." Thatcher, 659 F.3d at 1214 (quoting Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 950 (8th Cir. 1999)).

In reference to the first factor, Plaintiff asserts that it seeks a non-suit because it "needs more time to gather admissible evidence about the City's motivations." (Mem. in Supp. [Docket No. 65], at 13). However, once again, the Court notes that the City's motivations are in no way relevant to Plaintiff's sole remaining promissory estoppel claim. See, supra. What Plaintiff is seeking is analogous to escaping an adverse judgement because Plaintiff is plainly seeking dismissal to avoid the consequences of its own lack of diligence as outlined above. Seeking to escape an adverse judgment is not a proper purpose for the desire to dismiss. See, Thatcher, 659 F.3d at 1214. The first factor weighs against granting leave for Plaintiff to dismiss its promissory estoppel claim without prejudice.

In reference to the second factor, Plaintiff concedes that dismissal would be a waste of judicial resources. This Court agrees. Thus, the second factor too weighs against granting leave for Plaintiff to dismiss its promissory estoppel claim without prejudice.

In reference to the third factor, the Defendant argues that it will be prejudiced if Plaintiff is permitted to start this case over. (Mem. in Opp'n [Docket No. 68], at 47). Specifically, Defendant asserts that this case has been pending for more than nineteen months, Defendant has already successfully moved for judgment on the pleadings regarding Plaintiff's constitutional claims, Defendant has already successfully defended against Plaintiff's motion for judgement on the pleadings, and discovery is over regarding sole remaining promissory estoppel claim. (Id.). Defendant further asserts that it "would face significant costs if forced to start all over." (Id.).

"The time and effort invested by the parties, and the stage to which the case had progressed, are among the most important factors to be considered in deciding whether to allow a dismissal without prejudice, and, if so, on what conditions." Mullen v. Heinkel Filtering Sys., Inc., 770 F.3d 724, 729 (8th Cir. 2014) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)). Here, the Parties have already expended considerable effort in litigating the present case, and it is in its late stages. Considering the stage of the present litigation and its procedural history, the Court concludes that Defendant would in fact be severely prejudiced if Plaintiff were permitted to reassert its claims anew in a second round of litigation. See, Millsap by Millsap v. Jane Lamb Mem. Hosp., 111 F.R.D. 481, 484 (S.D. Iowa 1986) (finding the defendant would be prejudiced by dismissal after discovery was over and the defendant had already filed for summary judgment). The third factor therefore also weighs against granting leave for Plaintiff to dismiss its promissory estoppel claim without prejudice.

Accordingly, Plaintiff's Motion to Amend the Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64], is **DENIED** to the extent that it seeks an Order of this Court granting leave for Plaintiff to dismiss its promissory estoppel claim without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT**:

1.  Defendant's Motion for Protective Order, [Docket No. 50], is **GRANTED in part** and **DENIED in part** as set forth above;

2.  Plaintiff's Motion to Compel, [Docket No. 57], is **GRANTED in part** and **DENIED in part** as set forth above;

3.  Plaintiff's Corrected Motion to Amend Scheduling Order and for Leave to Amend the Complaint; or, Alternatively, for a Contested Non-Suit, [Docket No. 64], is **DENIED**; and

4.  Defendant Belle Plaine shall designate and produce a Rule 30(b)(6) deponent, as set forth more fully above, within fourteen (14) days of the date of this Order.

Dated: January 26, 2021                                  s/Leo I. Brisbois
                                                         Leo I. Brisbois
                                                         U.S. MAGISTRATE JUDGE